# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

MARTINA FLORES,

      Plaintiff,

v.                                          Case No.  6:20-cv-1080-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

      Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  Following an administrative hearing on May 16, 2019 at which plaintiff was represented by a non-attorney representative, the assigned Administrative Law Judge ("ALJ") issued a decision finding Plaintiff not disabled from September 28, 2015, the alleged disability onset date,[2]

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Docs. 29 & 32.)

[2] Although the ALJ stated that the protective date for Plaintiff's SSI claim was October 28, 2015 (Tr. 31), the relevant period for her SSI application is the month in which the application was filed through the date of the ALJ's decision. 20 C.F.R. §§ 416.330, 416.335.

through June 11, 2019, the date of the decision.[3]  (Tr. 17-31, 38-62.)

Plaintiff is appealing the Commissioner's decision and, as she has exhausted her available administrative remedies, this case is properly before the Court.  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

**I.    Standard**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a

---

[3] Plaintiff had to establish disability on or before December 31, 2020, her date last insured, in order to be entitled to a period of disability and DIB.  (Tr. 17.)

whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

Plaintiff raises two issues on appeal. First, she argues that the ALJ's reason for rejecting the opinion of Thomas J. Valente, M.D., Plaintiff's treating psychiatrist, that she required an assistive ambulating device due to limitations in walking "is not based on the correct legal standard or supported by substantial evidence." (Doc. 34 at 12.) Specifically, Plaintiff contends:

> Dr. Valente's opinion that Ms. Flores had a severe limitation in walking (Tr. 593) clearly conflicts with the ALJ's finding that she could perform light work (Tr. 24). The ALJ additionally failed to account for Dr. Valente's opinion that Ms. Flores needed an assistive device in the residual functional capacity assessment ["RFC"] (Tr. 24). Therefore, the ALJ was required to explain why his opinion was not adopted.

(*Id.* at 13.) Second, Plaintiff argues that the ALJ failed to apply the correct legal standards to the opinions of Drs. James G. Brown and Jorge Pena, State agency non-examining psychological consultants. (*Id.* at 13-18.) Defendant counters that the ALJ applied the proper legal standards and that his findings are supported by substantial evidence. (Doc. 35.) The Court agrees

3

with the Plaintiff on the first issue and, therefore, does not address the remaining issues.

### A.  The ALJ's Findings

At the first step of the five-step sequential evaluation process,[4] the ALJ found that Plaintiff had not engaged in gainful activity since the alleged onset date of September 28, 2015. (Tr. 19.) At step two, the ALJ found Plaintiff had the following severe impairments: fibromyalgia, migraines, depressive disorder, anxiety disorder, and posttraumatic stress disorder ("PTSD"). (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Tr. 21.)

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform a reduced range of light work[5] with the following limitations:

> [T]he claimant is limited to never climbing ladders, ropes, or scaffolds, and only occasionally climbing of ramps or stairs, stooping, kneeling, crouching, crawling, or engaging in activities requiring balance.  She is limited to only occasional exposure to extreme cold, weather, and hazards, defined as work with machinery having moving mechanical parts, use of commercial

---

[4] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[5] By definition, light work involves lifting no more than twenty points at a time with frequent lifting or carrying of objects weighing up to ten pounds; it requires a good deal of walking, standing, or sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10.

> vehicles, and exposure to unprotected heights. The claimant is limited to the performance of simple, routine, and repetitive tasks, as well as only occasional interaction with the public and coworkers.

(Tr. 24.) In determining Plaintiff's RFC, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 [C.F.R.] [§§] 404.1529 and 416.929 and SSR 16-3p." (*Id.*)

The ALJ then discussed Plaintiff's subjective complaints, including her reported use of an assistive device for walking due to dizziness and pain, noting that she presented to the hearing in a wheelchair.[6] (Tr. 25.) The ALJ

---

[6] The ALJ summarized Plaintiff's subjective complaints as follows: The claimant initially alleged disability due to fibromyalgia, headaches, depression, and PTSD, as well as asthma . . . . In her function report, the claimant complained of persistent, severe pain that causes difficulty with sleeping and daily activities []. She also reported an inability to focus due to headaches as well as widespread joint pain in the shoulders, fingers, and toes []. The claimant listed difficulties with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, memory, completing tasks, concentration, understanding, following instructions, and using her hands []. According to the claimant, she is able to walk about five minutes before needing to rest, she can sit for about thirty minutes, and she can stand for about five minutes, and she complained of daily headaches, which have been present all her life, that last two to three days each []. Moreover, the claimant complained of medication side-effects including sleepiness []. At [the] hearing, the claimant complained of ongoing difficulties with pain and [] concentration. She testified to an inability to sit or stand for long periods. According to the claimant, she has suffered from headaches almost all her life, and they are getting worse and do not improve with treatment. She rated her fibromyalgia pain at a 5 to 7 out of 10 with receipt of [sic]

5

found that although Plaintiff's treatment records were generally consistent with her medically determinable impairments, they were not consistent with her subjective reports of disabling symptoms and that this suggested that her symptoms were not as severe as she alleged. (*Id.*) The ALJ then addressed the objective medical evidence, in relevant part, as follows:

> According to the evidence of record, the claimant has a history of chiropractic treatment for complaints of headaches prior to the alleged onset date []. However, during a primary care visit in early 2016, the claimant was noted to deny any issues with back, joint, or muscle pain, numbness, dizziness, headaches, or diminished mental health, and her provider noted intact musculoskeletal, neurological, and psychiatric examination findings [].
>
> Following her application filing date, the claimant presented to her primary care provider in November 2016 with complaints of fibromyalgia-like symptoms []. Additionally, she admitted to increased symptoms of depression and anxiety due to personal and family issues, but she denied any suicidal thoughts or ideation []. Despite her complaints, according to her provider, she presented with normal gait, no gross neurological deficits, normal extremity range of motion, alertness, and full orientation []. During a subsequent visit, her provider did note positive trigger point testing as well as complaints of hot flashes []. For treatment, she was recommended . . . extra strength Tylenol, naproxen, and amitriptyline, as well as referred [to] psychology [for] evaluation [].
> . . .

---

medication and a 10 to 15 out of 10 during a flare[-][up], which occur very often, according to the claimant. With respect to her depression, she complained of poor focus and anxiety that causes her to isolate and cry during the day, despite receipt of treatment. The claimant presented to [the] hearing in a wheelchair, and she reported use of this [sic], a cane, and [a] walker due to dizziness and pain. She testified that she is able to lift up to a gallon of milk.

(Tr. 24-25.)

6

> Following this period, [the] claimant continued with primary care visits and mental health therapy in late 2016 []. Office visit notes document complaints of headaches with photophobia and nausea with incomplete relief with Tylenol and Excedrin []. . . . Moreover, although the claimant complained of ongoing widespread pain, her provider noted normal gait and normal extremity range of motion testing, and the claimant denied any falls or injury due to her pain complaints []. For treatment, she continued with receipt of [sic] medication and also received therapeutic injections in late 2017 [].
>
> Treatment notes from 2018 document similar complaints, examination findings, and treatment as before []. Eventually, in November 2018, the claimant was noted to present with [the] use of a walker for ambulation, at which time she complained of ongoing headaches with some nausea and dizziness as well []. However, the following month, she reported improvement with her headache severity []. Eventually, in March 2019, she presented for a neurological evaluation for these complaints []. At that time, she reported suffering from headaches since she was a child[,] with increase in frequency and duration over the previous few years []. According to her examiner, the claimant presented with nonfocal neurological examination, fluent speech, intact comprehension, normal memory, 5/5 strength in all extremities, normal finger dexterity, intact sensation, not grossly ataxic gait, use of [a] cane due to pain, and normal tandem gait []. Her examiner felt that she was suffering from underlying migraines complicated by daily headaches related to analgesic rebound as well as fibromyalgia, depression, and sleep deprivation []. For treatment, she was recommended for receipt of [sic] Topamax and discontinuance of analgesics and caffeine []. During [a] follow-up [appointment] the next month, the claimant reported decreased frequency in her migraines, improved sleep, and help with [the] use of Relpax [].

(Tr. 25-26.)

Based on these findings, the ALJ determined that Plaintiff had functional limitations as a result of her fibromyalgia, migraines, depressive

7

disorder, anxiety disorder, and PTSD. (Tr. 26.) The ALJ also determined that, based on the objective evidence, Plaintiff retained the ability to perform light work with the limitations reflected in the RFC. (*Id.*) The ALJ explained, *inter alia*, that given Plaintiff's "history of migraines with dizziness and nausea, widespread pain with positive tender point testing, and medication side-effects of sleepiness," Plaintiff was limited to "only occasional lifting of twenty pounds, as well as never climbing ladders, ropes, or scaffolds, occasional climbing of ramps or stairs, stooping, kneeling, crouching, crawling, or engaging in activities requiring balance, and occasional exposure to extreme cold, weather, and hazards, . . . and exposure to unprotected heights." (*Id.*)

In evaluating the opinion evidence of record, the ALJ noted, in part, that Plaintiff had been "issued a disability parking placard at the recommendation of her provider." (Tr. 28.) However, the ALJ gave the "issuance of this permit little weight in this determination because it provide[d] little insight into the claimant's capacity for work-related tasks." (*Id.*) The ALJ further explained as follows:

> As discussed above, despite the claimant's allegation of debilitating physical limitations, the evidence of record indicates that she presented with intact gait, strength, and range of motion testing on several occasions. Moreover, the claimant's headache complaints are longstanding in nature, and she reported improved symptoms and headache control with receipt of neurolog[ical] treatment. Despite her use of an ambulation

8

> device and presentation with a wheelchair at [the] hearing, the evidence of record documents examination findings of intact gait and strength, and she began use of these devices on her own as opposed to being prescribed such use by an acceptable medical source. She also previously denied use of any such device in her function report.

(*Id.*) The ALJ found that, "[d]espite her allegations, the record lacks any evidence that she is so significantly limited, which suggests her limitations are not as severe as she reported." (Tr. 28.) "After considering the treatment record, medical opinion evidence, and the statements made by the claimant," the ALJ determined that the RFC assessment adequately accounted for Plaintiff's remaining functional capacity. (Tr. 29.)

The ALJ then determined that Plaintiff was unable to perform her past relevant work, but, considering her age, education, work experience, RFC, and testimony of the vocational expert ("VE"), there were jobs in significant numbers in the national economy that Plaintiff could perform, including cleaner/housekeeper, folder, and mail clerk. (Tr. Tr. 29-30.) Thus, the ALJ concluded that Plaintiff was not disabled from the alleged onset date through the date of the decision. (Tr. 31.)

### B. Dr. Valente's Opinion

The Court agrees with Plaintiff that the ALJ failed to properly evaluate the opinion of Dr. Valente that Plaintiff had severe walking limitations and required an assistive device and that such error warrants a remand.

9

Although Defendant counters that the ALJ applied the correct legal standards in assigning little weight to Dr. Valente's opinion and that substantial evidence supports his decision, these arguments are unavailing.

Dr. Valente prepared and signed a Physician/Certifying Practitioner's Statement of Certification in support of Plaintiff's Application for Disabled Person Parking Permit, dated November 1, 2018.  (Tr. 593.)  Dr. Valente indicated that Plaintiff was "a disabled person with a permanent disability[] that limits [illegible] []her ability to walk 200 feet without stopping to rest." (*Id.*)  In terms of Plaintiff's disability type, Dr. Valente indicated, *inter alia*, that Plaintiff was unable "to walk without the use of or assistance from a brace, cane, crutch, prosthetic device, or other assistive device." (*Id.*)  Dr. Valente also indicated that Plaintiff had a "[s]evere limitation in [her] ability to walk due to an arthritic, neurological, or orthopedic condition."  (*Id.*)

As Plaintiff argues, the ALJ did not meaningfully address Dr. Valente's opinion regarding her walking limitations or need for an assistive device, which conflicts with the ALJ's finding that she could perform a limited range of light work.  Instead, the ALJ concluded that the issuance of a handicapped placard did not "provide insight" into Plaintiff's work-related limitations.  (Tr. 28.)  However, this statement in too vague to allow for meaningful review and is insufficient for the Court to determine whether the ALJ properly evaluated the opinion of Dr. Valente, a treating physician, particularly in light of the

record as a whole, which documented Plaintiff's complaints of pain with movement and ambulation due to fibromyalgia, problems with dizziness, suffering at least one fall,[7] consistent complaints of generalized moderate to severe pain due to fibromyalgia, ineffective treatment of her fibromyalgia pain due to adverse reactions to medication,[8] and her inability to obtain other pain treatment due to lack of funds and/or problems with insurance. (*See, e.g.*, Tr. 603 (noting, on November 15, 2018, that Plaintiff had to discontinue Lyrica for fibromyalgia due to lower extremity swelling); Tr. 598-99 (treatment note from Dr. Khannia Erif Thomas, Plaintiff's primary care physician, dated November 12, 2018, indicating "Patient uses walker to ambulate and states that fibromyalgia affects her daily" and referring Plaintiff to physical therapy for evaluation and treatment as she was using a

---

[7] Plaintiff also reported feeling dizzy and almost falling in February of 2015, before the alleged onset date. (*See* Tr. 587 (chiropractic treatment note dated February 18, 2015 indicating Plaintiff reported that she "slipped and nearly fell (felt dizzy)" but her husband caught her).)

[8] After evaluating Plaintiff on March 14, 2019, Plaintiff's neurologist, Eric Aragon, M.D., discontinued her analgesics due to headaches, which were incidentally being used to treat her fibromyalgia pain. (Tr. 663.) Dr. Aragon noted as follows: "She seems to suffer from underlying migraine complicated by a constant daily headache related to analgesic rebound. In addition[,] fibromyalgia and depression as well as sleep deprivation contributes to her daily headache. After my discussion [with her], we agreed to discontinue all analgesics . . . ." (*Id*.) After a follow-up appointment on April 16, 2019, Dr. Aragon noted that Plaintiff's migraines had decreased in frequency, she reported "she is sleeping somewhat better," and that Relpax was helping, but "[s]he continues to be severely affected by fibromyalgia" and "ambulates with a walker due to fibromyalgia pain." (Tr. 664.)

11

walker); Tr. 601 (treatment note from Dr. Thomas dated November 1, 2018, observing Plaintiff was "using a walker"); Tr. 606 (treatment note from Dr. Thomas dated September 27, 2018 indicating that Plaintiff reported she was in a lot of pain with migraines and body aches, was experiencing a fibromyalgia flare-up, had edema on Lyrica, had a lot of muscle spasms, her pain was 8/10, and observing Plaintiff looked uncomfortable, instructing Plaintiff to stop taking Lyrica and naproxen, and noting positive findings for joint pain and myalgias); Tr. 611-12 (treatment note from Dr. Thomas dated May 10, 2018, noting that Plaintiff reported "pain all over as a result of falling on her kitchen floor (linoleum) yesterday" and that the fall exacerbated her pain, which was rated as 10/10); Tr. 641 (treatment note dated April 10, 2017 indicating that Plaintiff's pain was constant, but was better with Tylenol, naproxen, and nortriptyline, but was not completely relieved and she had to take very high doses, observing normal gait but noting that her pain was worse with movement, and referring Plaintiff to pain medicine for fibromyalgia evaluation and treatment); Tr. 513 (treatment notes from Dr. Paul Jueng dated November 30, 2016, noting Plaintiff "persists with diffuse fibromyalgia pain which worsens when she does not sleep well" and "is not able to afford follow-up with pain specialist"); Tr. 595 (treatment note dated September 24, 2015, indicating Plaintiff complained of dizziness). *But see* Tr. 636 (treatment note dated May 1, 2017 indicating that

12

Plaintiff denied any injury and falls, was referred to pain management, but noting that she could not afford it).

Based on the foregoing, the ALJ's reason for rejecting the opinion of Dr. Valente was vague and unsupported by substantial evidence. Therefore, the undersigned finds that this matter is due to be remanded with instruction for the ALJ to expressly address Dr. Valente's opinion regarding Plaintiff's walking limitations and need for an assistive device. In light of this conclusion, the Court need not address Plaintiff's remaining arguments. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008).

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this Order, pursuant to sentence four of 42 U.S.C. § 405(g) with instructions to the ALJ to conduct the five-step sequential evaluation process in light of all the evidence, including the opinion evidence from treating, examining, and non-examining sources, conduct any further proceedings deemed appropriate, and to develop a complete record.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on September 27, 2021.

/s/ Monte C. R.
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

14